UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**MAGISTRATE JUDGE'S NO.   20-MJ-5185**

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION | ) | **UNDER SEAL** |
| OF THE UNITED STATES OF AMERICA | ) | |
| FOR AUTHORIZATION TO OBTAIN | ) | |
| LOCATION DATA CONCERNING A | ) | **AFFIRMATION IN** |
| CELLULAR TELEPHONE ASSIGNED | ) | **SUPPORT OF** |
| TELEPHONE NUMBER (859) 705-8622 | ) | **APPLICATION** |
| WITH SERVICE PROVIDED BY | ) | |
| SPRINT | ) | |

\* * * * *

## INTRODUCTION

I, Michael A. Van Aelstyn, your affiant, being duly sworn, states as follows:

1. I am a Special Agent (SA), with the Federal Bureau of Investigation (FBI). I have been employed with the FBI since 2010 and am presently assigned to the Safe Streets Task Force, Lexington, Kentucky. SA Van Aelstyn is authorized and has the responsibility to investigate and arrest persons for violations of federal law. From 2008 to 2010, I was a City of Phoenix Police Officer in Phoenix, Arizona. Prior to being a police officer, I was a college professor and taught various disciplines of criminal justice and law enforcement related classes. During my education, training and experience accumulated from 2004 to present I have received instruction in: interviewing techniques, firearms, defensive tactics, federal law, investigative processes and other law

1

enforcement skills. I have conducted numerous criminal investigations in: drug possession/distribution, domestic violence, bank robberies, child exploitation, murder and other violent and non-violent criminal offenses. I have also conducted numerous search and arrest warrants in a variety of criminal investigations.

2. The statements contained in this Affidavit are based, in part, on information I have learned through my own investigation, experience, and background as an FBI Special Agent. The statements contained herein are also based on information gained from other law enforcement officials and individuals who have assisted in this investigation. The information contained herein is not meant to include every detail of every aspect of this investigation, but to provide sufficient information to establish probable cause for the issuance of a Pen Register/Trap and Trace for telephone number 859-705-8622. The factual basis below sets forth the pertinent information related to the request for authorization.

3. Members of the FBI, in conjunction with members of Homeland Security Investigations (HSI) and Lexington Police Department (LPD), have been investigating MAURICE TAYLOR (TAYLOR) aka "Wee Wee" and his criminal associates, located within the Eastern District of Kentucky, for ongoing criminal activity involving the distribution of illicit drugs to include cocaine, heroin and fentanyl, all controlled substances. Through law enforcement reports, open source database searches, business information, and source reporting, investigators determined that TAYLOR has two separate residences one in Charlotte, North Carolina and the other located at 456 Ohio

2

3

Street, Lexington, Kentucky.

4. I submit this Affidavit in support of an Application for an Order pursuant to Federal Rule of Criminal Procedure 41, authorizing agents of the Federal Bureau of Investigation to ascertain the physical location of the cellular telephone assigned cellular telephone number 859-705-8622 (the Target Cellphone or Target Telephone), including precise location information (PLI) concerning the Target Cellphone (the "Requested Information") for a period of thirty days. Your affiant is requesting the timeframe of 30 days in order to observe and identify co-conspirators in contact with the telephone number. The FBI has a validated Confidential Human Source (CS1) who has provided specific information to investigators that TAYLOR has engaged in drug trafficking for approximately 20 years.  CS1 has made multiple recorded conversations with TAYLOR on telephone number 859-705-8622.  The requested timeframe of 30 days will hopefully allow investigators to track TAYLOR's movements as he meets with other co-conspirators, and ultimately lead to the identification of other members and key locations utilized by the co-conspirators to hide and or distribute drugs.  Pursuant to an Administrative Subpoena, affiant has obtained records provided by SPRINT/T-MOBILE which shows that Sprint provides active service to the Target Cellphone. Based on the investigation, law enforcement believes TAYLOR is using the Target Cellphone to further the Target Offense.

4. Based on an administrative subpoena issued by FBI, investigators know that the Target Cellphone is a cellular telephone number issued by Sprint, subscribed to

4

MAURICE TAYLOR with a subscription and billing address of 456 Ohio Street, Lexington, KY 40508. The Target Cellphone was activated under this name on 07/30/2014, and is currently active. On approximately July 8, 2020, CS1 provided this number as the cellular telephone for MAURICE TAYLOR. CS1 also provided telephone number 704-200-6543 as another number that TAYLOR uses.

5. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other FBI agents and other law enforcement officers, including those listed in this Affidavit, and from my review of records and reports relating to the investigation. Since this Affidavit is being submitted for the limited purpose of securing an Order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the investigation.

6. Probable cause exists to believe that the Target Cellphone is being used by MAURICE TAYLOR concerning drug trafficking, in violation of 21 U.S.C. § 841(a)(1) [hereinafter referred to as "Target Offense"]. Probable cause exists to believe that the Requested Information will constitute or lead to evidence against those who are engaged in the commission of the "Target Offense," as well as the identification of individuals who are engaged in the commission of the offense. For the reasons set out in this Affidavit, there is probable cause to believe that the Target Offense is currently being conducted, and will continue to be conducted by TAYLOR and others.

**Historical Information**

5

Beginning in January of 2020, a qualified confidential human source (hereinafter CS1), who has provided accurate and reliable information in for the FBI, has been providing information about MAURICE TAYLOR, a known high-level drug dealer. CS1 stated that TAYLOR operates between Lexington, Kentucky and Charlotte, North Carolina.

7.      According to CS1, TAYLOR has been one of the largest drug dealers in the Lexington, Kentucky area for the past three years. TAYLOR paid approximately $100,000 to gain access to a Mexican drug connection, after the arrest of another large drug dealer, Ansar McGiver. McGiver was arrested in 2017 and is facing 20 years in federal prison for his involvement in drug trafficking in the Eastern District of Kentucky. For the past three years, TAYLOR has been living between Lexington, Kentucky and Charlotte, North Carolina maintaining operations in both locations. TAYLOR frequently travels all over the United States, however TAYLOR does not possess a full time job. According to CS1, TAYLOR is back and forth to North Carolina almost every other week.

8.   On January 15, 2020, CS1 recorded a conversation over the telephone via FaceTime with TAYLOR. TAYLOR is observed counting a large amount of United States currency. TAYLOR discusses laying it all out for his daughter who just turned 21. The recorded conversation lasts approximately 3 minutes, throughout the duration of the call TAYLOR is observed counting money the entire time.

9. On February 14, 2020, CS1 provides both telephone numbers used by TAYLOR. TAYLOR primarily uses telephone number 859-705-8622 to communicate with CS1. However, TAYLOR is known to also use telephone number 704-200-6543 to conduct

6

business as well.   CS1 stated that TAYLOR was back in Kentucky on this date.

10.   On February 23, 2020, CS1 had telephonic contact with TAYLOR.   TAYLOR asked CS1 "U got a dollar…I'm still in Charlotte" and then asks CS1 to go and meet TAYLOR's people to help handle an issue, because TAYLOR was out of town.

11.   On February 26, 2020, CS1 had contact with TAYLOR at Red Mile Casino in Lexington, Kentucky.

12.   On February 29, 2020, TAYLOR pulled up at Solid Platinum Gentlemen's club looking for an individual named "Dude." "Dude" is the son of an individual identified as "Gore".   Gore is also a member of the TAYLOR DTO.   TAYLOR was not allowed into the club because TAYLOR had on sweat pants.   TAYLOR stated he was in town for just a short period of time because of a family matter, but was heading back to Charlotte. TAYLOR stated "His people are sweating him" or giving him problems.

13.   On March 5, 2020, CS1 communicated stating he saw TAYLOR and spoke with him as TAYLOR is back in Lexington, Kentucky.   On March 7, 2020 CS1 bumped into TAYLOR at a new club on Main Street in Lexington.   TAYLOR was out with his wife that night.   On March 10, 2020, CS1 saw TAYLOR again in Castlewood area of Lexington.

14.   On April 6, 2020, TAYLOR was in town and had a conversation with CS1. TAYLOR was in town to pick up his new BMW and pick up a load of cocaine from his people.   TAYLOR still owed $20,000 on the BMW.

15.   On April 28, 2020, CS1 had a conversation with TAYLOR.   TAYLOR stated he was traveling back to Charlotte in two days, had been in Lexington for the past few days.

16. On June 9, 2020, CS1 stated that TAYLOR contacted CS1 and told CS1 to stop by Shad Wilson's house located at 1012 Darley Drive, Lexington, Kentucky. CS1 walked into the residence and Wilson and TAYLOR were sitting at the kitchen table with drug mixing supplies and two rectangular blocks of a hard pressed powder placed next to them. TAYLOR acted as if nothing nefarious was happening. According to CS1, CS1 quickly removed himself from the situation TAYLOR had some glasses which TAYLOR had purchased for CS1. CS1 took possession of the glasses and left soon after. CS1 managed to capture the moment via telephone camera.

17. On June 16, 2020, CS1 spoke with TAYLOR on telephone number 859-705-8622 in regards to a death that occurred at 1012 Darley Drive. The death was not related to a drug overdose, however, it was enough to scare TAYLOR.

18. On July 7, 2020, CS1 made a recorded video call to telephone number 859-705-8622 to arrange for a purchase of approximately 4-4.5 ounces of fentanyl. CS1 asks TAYLOR about the price of the fentanyl and CS1 asks for a lower price than the agreed upon $7800 that the two had agreed upon in a previous unrecorded conversation. The price change request was conducted to provide TAYLOR with the opportunity to establish a number/price of the fentanyl. TAYLOR also talks about the weather being different in Charlotte, which was causing the TAYLOR to experience allergy issues. TAYLOR and CS1 also discuss some oxycodone 30mg pills that TAYLOR has. On July 8, CS1 is provided with $8000 of United States Currency by the FBI to conduct a controlled delivery of fentanyl from TAYLOR. CS1 made a recorded telephone on telephone number 859-

8

705-8622 to TAYLOR asking where CS1 and TAYLOR should meet to do the deal. TAYLOR tells CS1 to meet at Buffalo Wild Wings on Man O War, which is located near Hamburg Shopping Center in Lexington, Kentucky. Law enforcement surveillance was in place to observe the controlled purchase take place. TAYLOR is observed driving a black in color Cadillac sedan with a temporary tag. CS1 exits the vehicle and enters the vehicle being driven by TAYLOR. After a few minutes, CS1 hands over the money to TAYLOR. TAYLOR was observed holding the money. TAYLOR provides a clear plastic bag with approximately 128.6 grams of a white powdery substance. CS1 hands TAYLOR the money, but then takes back $400, which is turned back over to law enforcement. The suspected powder is submitted to the Kentucky State Police Central Lab. The lab provided results that revealed the suspected powder was in fact fentanyl, a Schedule II controlled substance.

**Authorization Request**

19. Based on the information set forth above, I believe that the Target Cellphone, (859) 705-8622, is being used by MAURICE TAYLOR, a co-conspirator in the Target Offense. I believe that TAYLOR is using the Target Cellphone to further the Target Offense and potentially other illegal activities. I believe that the requested Global Position System (GPS) data related to the Target Cellphone will provide significant evidence in this ongoing criminal investigation. Specifically, I believe that the GPS location data will assist in tracking the movements of TAYLOR, identify locations used by TAYLOR and others to plan, facilitate and carry out the Target Offense. I believe,

9

based on my knowledge, training, and experience, that TAYLOR has been engaging in illegal activity, including committing the Target Offense, it is likely that TAYLOR is still engaged in criminal activity, and will continue to be engaged in criminal activity in the future.

20. Based on the foregoing, there is probable and reasonable cause to believe that the Requested Information will lead to evidence regarding the criminal activities described above. The Requested Information is necessary to determine the approximate location of the Target Cellphone, so that law enforcement agents can conduct physical surveillance of the user of the Target Cellphone and gather further admissible evidence in connection with expected transactions involving the Target Offense.

21. WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A), it is requested that the Court issue a warrant and Order authorizing agents of the Federal Bureau of Investigation to obtain the Requested Information for a period of thirty days, absent the seizure of the Target Cellphone or the arrest of TAYLOR, the user of the Target Cellphone, whichever event occurs first.

22. IT IS FURTHER REQUESTED that the Court direct SPRINT/T-MOBILE to assist agents of the Federal Bureau of Investigation by providing all information, facilities and technical assistance needed to ascertain the Requested Information, and further direct SPRINT/T-MOBILE, the service provider for the Target Cellphone, to initiate a signal to determine the location of the Target Cellphone on the service provider's network or with such other reference points as may be reasonably

10

available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the users of the Target Cellphone, for a period of thirty days absent the seizure of the Target Cellphone or the arrest of the user of the Target Cellphone, whichever event occurs first. Reasonable expenses incurred pursuant to this activity will be processed for payment by the Federal Bureau of Investigation.

23. IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellphone outside of daytime hours.

24. IT IS FURTHER REQUESTED that the warrant and this Affirmation, as it reveals an ongoing investigation, be sealed until further Order of the Court in order to avoid premature disclosure of the investigation, guard against flight, and better ensure the safety of agents and others, except that working copies may be served on the FBI Special Agent and other investigative and law enforcement officers of the United States, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and SPRINT/T-MOBILE as necessary to effectuate the Court's Order.

25. IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. 3103a(b), 18 U.S.C. §§ 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of thirty days after the termination of the

11

monitoring period authorized by the warrant or any extensions thereof.

                                         **Signed remotely per FRCP 4.1.  See addendum.**
                                         Michael Van Aelstyn, Special Agent
                                         Federal Bureau of Investigation

Sworn to before me this _24th_ day of July, 2020.

                                         MATTHEW A. STINNETT
                                         UNITED STATES MAGISTRATE JUDGE